IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 2349 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| SCANDINAVIAN REINSURANCE COMPANY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In January 2000 and again in 2001, Continental Casualty Company ("CCC") purchased aggregate loss reinsurance from Scandinavian Reinsurance Company ("Scan Re"). The terms of the aggregate loss reinsurance were set out in two agreements. Each of the agreements contained an arbitration clause providing that any dispute between the parties would be resolved by final and binding arbitration before a three-member panel. In early 2002, Scan Re alleged that CCC violated the terms of the agreements. The parties were unable to resolve the dispute and Scan Re demanded arbitration on November 21, 2003. A three-member panel issued an award on March 23, 2005. Responding to a request for clarification, the panel issued a second award on April 16, 2005. CCC moves to confirm both arbitration awards and enter a monetary judgment in its favor, including post-judgment interest. Scan Re cross-petitions to confirm the March 23, 2005 award and requests the court to order a return of its letter of credit.[1]

---

[1] Scan Re first filed its petition to confirm arbitration award in a separate case pending before Judge Elaine Bucklo on April 22, 2005. *See Scandinavian Reinsurance Ltd. v. Continental Casualty Co.*, Case No. 04 C 7020. CCC objected on jurisdictional grounds. On June 10, 2005, Judge Bucklo ruled that the parties should proceed in this case. *See id.*, 6/10/05 Order, Docket #26.

1

## BACKGROUND

### I. March 23, 2005 Final Arbitration Award

Following ten months of discovery and extensive briefing, the arbitration hearing commenced on March 14, 2005 and continued through March 17, 2005 before the panel of three arbitrators. The panel issued its award on March 23, 2005. The panel's findings included:

1. The 2000 and 2001 Excess of Loss Treaties inure respectively to the benefit of the 2000 and 2001 Aggregate Stop Loss Treaties.

2. The proper Subject Earned Premium for the Aggregate Stop Loss Treaties shall be defined as follows: All E & S earned premium after deducting product specific reinsurance and Non-Standard Auto but before XOL premium.

3. Scan Re shall maintain letters of credit to secure its obligations pursuant to this Award and under the appropriate Articles of the 2000 and 2001 Aggregate Stop Loss Treaties.

4. CCC shall pay a margin, determined as of December 31, 2004, in accordance with the provisions of this award.

5. CCC shall restate past reports and submit future reports consistent with this Award.

\*   \*   \*

7. The panel will retain jurisdiction of this matter for 30 days following the date of this Award in order to clarify an[y] issues that may arise from the wording of the Award.

8. Any relief requested by the parties and not specifically granted herein is denied.

CCC Mot. at Ex. C.

On March 25, 2005, pursuant to paragraph 7 of the March 23rd award, CCC requested clarification. In its request, CCC set out its understanding of the definition of "Subject Premium

and Subject Loss." In addition, it applied its interpretations and calculated that Scan Re immediately owed $27,880,734.00. CCC also submitted a proposed "Amended Final Award" including the amounts to be paid to CCC under its calculations.

## II. April 16, 2005 Award

In response to CCC's request for clarification, the panel declined to adopt CCC's proposed amended final award. Instead, the panel issued a second "Final Award" on April 16, 2005. The April 16th award provided:

1. The Panel's Final Award was composed as a declaratory judgment as to how various treaty provisions applied to the facts and issues raised during the course of this arbitration. It did not make findings on amounts due from Scan Re to CCC and thus cannot consider the confirmation of such amounts presented by CCC for approval as a "clarification." The Panel expects that the parties can determine the appropriate financial result flowing from the Award once the methodology used by CCC to recast amounts due from Scan Re is considered.

2. The methodology used by CCC in its letter and exhibits dated March 25, 2005 to calculate Subject Premium and Subject Loss, and all related calculations, for the 2000 and 2001 Aggregate Stop Loss Treaties are conceptually consistent with the Final Award issued by the Panel.

CCC. Mot. at Ex. F.

## DISCUSSION

Judicial review of an arbitration award is extremely limited. *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988); *Bargenquast v. Nakano Foods, Inc.*, 243 F. Supp. 2d 772, 774 (N.D. Ill. 2002). "Judicial review of arbitration awards is narrow because arbitration is intended to be the final resolution of disputes. Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Nat'l Wrecking Co. v. Int'l Brotherhood of Teamsters*, 990 F.2d 957, 960 (7th Cir. 1993). A court has no

3

authority to alter an arbitration award or substitute its judgment for that of the arbitrator. *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183-84 (7th Cir. 1985), *cert. denied*, 475 U.S. 1010 (1985).

## I. Validity of the July 16th Award

CCC argues that the panel issued its final award in two parts, on March 23rd and April 16th, 2005, and moves to confirm both parts of the award. In response, Scan Re moves to confirm only the March 23rd award. Scan Re argues that the first award resolved all disputed issues, and under the doctrine of *functus officio*, the panel no longer had jurisdiction to "reconsider" the award. According to Scan Re, the July 16th award was not part of the panel's final judgment but simply affirmed the March 23rd award, noting that it was composed as a declaratory judgment.

The *functus officio* doctrine prohibits an arbitrator from reconsidering or amending an award once a final decision has been rendered. *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, et al. v. Excelsior Foundry Co.*, 56 F.3d 844, 845 (7th Cir. 1995) (arbitrators should have the power to reconsider their opinions within a reasonable amount of time) ("*Excelsior Foundry*"); *Massachusetts Casualty Ins. Co. v. North American Reassurance Co.*, Civ. No. 89 C 7744, 1990 WL 7176, at *3 (N.D. Ill. Jan. 17, 1990). "The doctrine is jurisdictional and recognizes that the arbitrator's authority is entirely terminated by the completion and delivery of an award." *Massachusetts Casualty Ins. Co.*, 1990 WL 7176, at *3. As an exception to *functus officio*, arbitrators have well established authority to issue a supplemental award clarifying or explaining the original award. *Excelsior Foundry Co.*, 56 F.3d at 848; *Unionamerica Ins. Co. v. Allstate Ins. Co.*, 302 F. Supp. 2d 865, 868 (N.D. Ill. 2004) ("[u]nder certain circumstances, an arbitral panel may be given an opportunity to explain or clarify its ruling); *see also Arch Dev. Corp. v. Biomet, Inc.*, No.

4

02 C 9013, 2003 WL 21697742, at *5 (N.D. Ill. July 30, 2003). The power of arbitrators to clarify an award must be exercised within a reasonable period of time. *Excelsior Foundry*, at 848.

By issuing the July 16th award, the arbitration panel did not reconsider or amend the March 23rd award in violation of *functus officio*. The second award clarifies the meaning of the March 23rd award within the allowable exception. *Arch Dev. Corp.*, 2003 WL 21697742, at *5. If an arbitration award is unclear or ambiguous, an arbitrator is required to provide clarification. *See Arch Dev. Corp.*, 2003 WL 21697742, at *5. In response to CCC's request for clarification and confirmation of its calculations, the July 16th award explains that the panel "did not make findings on amounts due from Scan Re to CCC and thus cannot consider the confirmation of such amounts." CCC Mot. at Ex. F. The amended award explicitly states that it is a "clarification." It was therefore permissible for the panel to issue the July 16th award. Doing so did not violate the doctrine of *functus officio*. The July 16th award is part of the panel's final decision.

## II. Motion and Cross-Petition to Confirm

Confirming an arbitration award is a summary proceeding that merely renders a final arbitration award into a judgment of the court. *Arch Dev. Corp.*, 2003 WL 21697742, at *3. Accordingly, the court's function in confirming an arbitration award is severely limited. *Id.; Balark v. Ethicon, Inc.*, 575 F. Supp. 1227, 1229-30 (N.D. Ill. 1983). In deciding whether to confirm an arbitration award, courts must not review the merits of the arbitration panel's decision. *Arch Dev. Corp.*, 2003 WL 21697742, at *4.

CCC requests that this court confirm both awards and direct Scan Re to pay $27,990,734.00, as well as post-judgment interest. CCC argues that while the panel declined to confirm the amounts due to CCC, the panel stated that CCC's methodology to calculate "Subject Premium and Subject

5

Loss, and all related calculations," for the agreements "are conceptually consistent with the Final Award issued by the Panel." CCC Mot. at Ex. F. Therefore, CCC argues that awarding it a monetary judgment would be consistent with confirming both awards.

Scan Re also requests confirmation of the March 23rd award, but disputes that monetary relief is available. Scan Re notes that to date, CCC has not complied with March 23rd award. CCC refuses to restate its past reports and submit future reports consistent with the initial award. In response to CCC's request for $27,990,734.00, Scan Re argues that both awards issued by the arbitration panel declined CCC's requests for monetary awards. Further, due to a timing feature in the agreements, CCC's covered losses become due after CCC exhausts the "Retention" and "the funds withheld accounts." The funds withheld accounts are interest accruing accounts holding CCC's reinsurance premiums. These accounts currently have positive balances (although the true balance has not been determined pending CCC correcting its reporting in accordance with the March 23rd award). Accordingly, Scan Re argues the proper amount due to CCC cannot be determined prior to CCC restating its reports and, in any event, it cannot owe CCC any amount until the funds withheld accounts are exhausted. Scan Re also requests that the court order that CCC return a $50 million letter of credit because it is above the required amount of security under the March 23rd award.

Despite the differing interpretations of the awards, the awards are unambiguous. Where an arbitration award is clear and unambiguous, and the arbitration panel did not exceed its authority under the contract, a court must enforce the award as written. *See Massachusetts Casualty Ins. Co.*, 1990 WL 7176, at *3; *Randall v. Lodge No. 1076, et. al*, 648 F.2d 462, 465 (7th Cir. 1981). The issue in the arbitration was whether the agreements permitted CCC to cede certain losses to Scan Re

6

after ceding the same losses to its 2000 and 2001 Excess of Loss reinsurance. On this issue, the panel found for Scan Re: that the Excess of Loss Agreements did inure to the benefit of the agreements. On two occasions, the panel declined to award CCC a quantified monetary judgment. Instead, the arbitration panel issued its award in the form of a declaratory judgment. The panel stated "[i]t did not make findings on amounts due from Scan Re to CCC and thus cannot consider the confirmation of such amounts presented by CCC for approval as a 'clarification.'" CCC Mot. at Ex. F. In declining to confirm CCC's calculations, the panel made clear that it intended its awards to be the final judgment and directed "that the parties can determine the appropriate financial results flowing from the Award once the methodology used by CCC to recast amounts due from Scan Re is considered." CCC Mot. at Ex. F; *see also GES Exposition Services, Inc. v. Bates*, No. 97 C 3716, 1998 WL 142456, at *3 (N.D. Ill. March 20, 1998) ("To be considered final, an award must be intended by the arbitrator to be his complete determination of every issue submitted").

Clearly, awarding CCC its desired monetary judgment would not confirm the panel's award, but would modify the award. This court cannot confirm a monetary award that the panel twice declined. The amount due to CCC should be determined by the parties in accordance with the agreements and the March 23rd and April 16th awards.

Scan Re asks the court to order CCC to return a letter of credit. A return is not contemplated in the panel's decision. The March 23rd award stated, "Scan Re shall maintain letters of credit to secure its obligations pursuant to this Award . . . ." CCC Mot. at Ex. C. Therefore, Scan Re's request for the return of the letter of credit must be denied.

## CONCLUSION

The cross-petitions to confirm the arbitration award are granted in part and denied in part.

The March 23, 2005 and April 16, 2005 arbitration awards are confirmed as written.

August 30, 2005

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge